Our next matter is Franklin and Edwin Lopez-Santos v. Atty. Gen. Somebody ought to keep this in mind as the law school moved forward. Oh, oh, yeah. I might look in her memo what she said last week. Jacqueline? May it please the court, Robert Jekyll, counsel for petitioners Franklin and Edwin Lopez-Santos. And I'm reserving three minutes for rebuttal. So there is a group. By helping me understand the social group that you're claiming, the particular social group. Excuse me, your honor. The particular social group. As I understand it, there are four bases. The only one seems to be kind of much meat to it. Had been agreed to. In terms of withholding of removal. You're arguing in order to get persecution, you've got to get on account of. Sure. And on account of what are you arguing? On account of. I'm sorry, I'm having a little hard time hearing. OK. One of the claims that you're arguing to get the withholding of removal is that he's a protected status on account of. On account of a social group. And what is that social group? That social group is a member of the Lopez-Santos family. And the reason that we have argued that social group is protected is that members of the Lopez-Santos family, including Henry, have been tortured and murdered by members of MS-13. Well, that's my problem, because as I understand it, I don't know how many, but numerous members of the family are still there. And there's not any suggestion that they're undergoing any kind of persecution, is there? There is a suggestion, your honor. When Henry was killed, a note was found on his body that said six left. That's understood to be members of the family. Well, is it clear what the note said? Because I thought that's what the note said, too. And the more I read through this, it's not clear what the note said. I believe the note said six. I can refer to my notes in a minute. But I do know that two of their uncles have also been killed. One of their cousins is missing. But I think the point you raise is important here, which is that there's a fair body of evidence in this case that discusses the question of particular social groups. Specifically, what's going to happen to Edward and Franklin if they're returned to Honduras? We argue before the IJ that given what happened to Henry 15 days upon return to Honduras, he was tortured and killed, and the police acquiesced and did nothing to help him or even to move his body from where it was found. That's the core of the case. It was the core of the case before the IJ. Isn't there evidence on the record that Henry had also beaten up one of the members of MS-13? Henry had gotten into a fight with a member of MS-13. Franklin had called the police on a member of MS-13 and had been beaten. In the record, Henry Edwin stated that he was being targeted because he had defended Henry and he thinks it was revenge. More specifically, one of the sworn statements that was ignored by the IJ and the BIA was from Edwin and Franklin's father, where Aria Estrock, a member of MS-13, came to their father and said, where's Edwin and Franklin? We want to kill them if they come back. That's the fear. Now, this is, of course, what I spoke to the Catt claim and to the past persecution. I do want to point out, though, that there is agreement with the DOJ, as I read their briefs, that remand is appropriate, at least for Franklin's Catt claim. And we believe remand is appropriate for the other claims, for both brothers, for essentially the same reason, which is that they submitted the evidence showing what would happen to them, submitted evidence of past persecution and inability to do that to the country. That's not why there's an agreement for remand. That's not why there's an agreement for remand. The agreement for remand is because there was a clear error standard that was applied in Franklin's case, and that clear error standard applies to fact finding, but there was a need to apply a de novo standard at the end of everything. So that's the reason for remand. That reason does not apply beyond that one Catt claim. You may advocate for remand for other reasons, but that reason is not it. I understand, Your Honor. But I think that the remand is appropriate for the other matters for, frankly, similar reasons, which is that there had not been proper miliary analysis under Franklin. There had not been proper miliary analysis for Edwin. The BIJ, under this court's precedent in miliary, would have had an obligation to review the evidence concerning Henry, concerning country conditions and concerning the statements of family members. He ignored it. The BIA had that same obligation, never once mentioned Henry in either of the BIA's opinions, and effectively ignored the core of their claim. Well, there was an adverse credibility finding. I mean, when you get to the point of an adverse credibility finding, I mean, you know, that tends to be a shortcut to resolution once an IJ makes an adverse credibility finding. And we have, at least in Edwin's case, a very detailed adverse credibility finding by the IJ, followed up by pretty thorough analysis by the BIA. Franklin's case, I think as your brief points out, is pretty identical as far as how the IJ treats that. But then the BIA's analysis of the adverse credibility in Franklin's case is, it stands in marked comparison. That's true, Your Honor. But even in Edwin's case, there are problems with the adverse credibility determination. And the first is that credibility has to be reviewed in the context of the rest of the evidence in the case. Well, to start with, the thing with Edwin, I guess, that I think, at least in my mind, hurts you the most, is the statement he made, I guess, to the initial examining officer that he was coming for a better employment opportunity. When he came over the border back in, I think, ten years ago. And that's a hurdle. I don't know how you get past that. And he said he was nervous and all that, but the interview was in Spanish. Sure, Your Honor. So, well, in our briefs we discussed this in terms of his state of mind having made a long, arduous journey. I don't want to get into that. The record, we have the records. But I think the point is more clear that credibility alone is not the issue. There's also a question of corroborating evidence. I don't think there's a question. Well, there is credibility. What's that? That's credibility. Corroborating evidence goes to credibility. Well, none of the corroborating evidence was reviewed. And that's the problem. There is corroborating evidence that was submitted before the IJ that discussed what's going to happen to them when they return. And that evidence was not discussed in the opinion. Some of it was. I mean, let's, I mean, I think it would do you good to really be accurate with the record. Because, well, at least for one of your claims it might do you good to be accurate with the record. For the other, maybe not so much. But there was an adverse credibility finding. Yes. That's subject to substantial evidence. And as Judge McKee points out, you know, that's pretty good substantial evidence that he said he was coming not for flight of the gangs, but for a better opportunity. And then in the remainder of the corroborating evidence, there's substantial evidence there as well, at least for Edwin. So, I mean, we get to the point of him being able to show past or future prosecution, persecution being having some grounded substantial evidence. Don't you have to beat that? Sure. And, Your Honor. There's no substantial evidence. I want to address that. But I also want to make sure I discuss the Kattenmeier issue with Edwin specifically separately. But to your question of credibility. Substantial evidence. Substantial evidence. That's the lens. Sure. First, I mean, in this court's precedent in Kaushi is that where an administration decision determines fails to consider evidence that is on its face relevant and persuasive, which I believe the documentary evidence about Henry is, then remand is appropriate. I think that also, well, let's assume there were inconsistencies in Edwin's statements. The corroborating evidence helps to explain a lot of it. And one of the issues is that this is sort of a strange case because there was a consolidated trial, bifurcated IJ opinions, separate BIA decisions. And now we're back. But you see that none of what Edwin, none of the credibility of Edwin. Took into account any of the surrounding context. So Edwin was found to be non-credible because there were some differences in what he said about who was present at certain meetings that happened 10 years ago. His cousin, Brian, was his testimony was given diminished weight because even though he seems to have been found consistent, it was several years ago. And how can we know? He wasn't viewed in the context of what Franklin said either. So, you know, let me push back. Sure. The IJ decision in Franklin's case says, quote, Additionally, respondents, father, aunt and other relatives, aside from Henry, remain in Honduras unharmed. Quote. Yes. That sounds to me like the IJ has accounted for Henry's situation as well as his other family members. And so coupling that with an adverse credibility finding seems that the IJ has done the job that we ask of IJ. Your Honor, I think that's a that's a broad inference to make. And I don't think it's when the BIA relied on either. So. So. But I'm starting at the beginning of the record. Your next point is to say, well, the BIA didn't didn't didn't rely on that. We want to review final orders. But but at least with the IJ, the IJ made that decision. Right. The IJ did not mention or give any weight to any of the evidence provided in this one statement. And we can see this in the record because the only mention of it is in a. Isn't that really your only hope with respect to Edwin? To Edwin, that none of the evidence. If you get into whether there's substantial evidence to say that there was on the finding of adverse credibility, there's a whole lot. There's at least three things that I can think of that support that. I don't think there's much of a leg to stand on. So what you really have to rely on, it would seem, is that the IJ didn't refer to, but really didn't actively consider or at least didn't show that he considered the statements that were submitted by the family. That's correct, Your Honor. And we do rely on that. And and that's that also cuts to the to the Kat claim in the Myrie issue. Under this court's ruling in Myrie. The if the if the IJ does not consider the evidence, the BIA can't simply infer that he had and the IJ's record and either brother is devoid of any discussion of any of those sworn statements other than in a footnote to note that DHS objective. That's it wasn't a testimony that in effect, I think it was in your client's own submission that the army had been sent into, of course, Sao Paulo. That's not the technical correct name of the city, but the army had been sent in. I believe there were there were national police. OK. Right. Try to deal with the the violence. And Edwin, in his testimony, said he went to one of them and spoke to him. And the police officer that he spoke to, Miguel, said, don't bother finding a report. We're stretched in and can't help some money. If that one statement would negate the fact that the army was sent in, doesn't that get to doesn't undermine your acquiescence argument that you have to establish under the cat claim? The acquiescence argument. If the army is being sent in to deal with the violence, how can you establish acquiescence? I think the first question is whether the BIA is properly reviewed. What's going to happen to Edwin when he arrives in Honduras? So the question of whether they're well, that's important because if something nasty happens to him, but it's not with the acquiescence of the government, then you can't get the cat claim. If it's private actors doing something right, the cat claim goes away. But we're arguing that there isn't effective protection. And we know that both because of what happened to Henry and because of the statements that that army officer made to Edwin, saying there's nothing we can do. What about being in Copan ruinous? Well, I mean, did anything did anything bad happen to any any of these people in Copan as opposed to in San Pedro Sula? I don't know that anything has happened to them yet. However, we ended up on and they went to San Pedro Sula to work. And so and the army was sent into San Pedro Sula and they've never been hurt in Copan. So on page four, twenty five of Edwin's administrative record, there was the statement by their cousin Christian who said the MS threatened my family in in Copan, the MS. They knew we were related and threatened all of us there everywhere in Honduras. So but that was not reviewed by the. So let me let me tease this out, though, because there's also a nexus provision. And so it seems that it has to be for withholding on account of protected social group. And it seems that the fact that all of the people who turned down the gang are related seems to be coincidental. It seems that whatever injury or harm they're facing isn't because they're related, but because they were all there that one day when the gang or two days or three days when the gang offered them to join. And so it strikes me that it could have been. It's a it's a coincidence that they're related. But really, they were just threatened for turning down the gang. And this was not a determination made by the BIA, I don't believe. And we're looking at an administrative agency decision. And I think that at this point, we shouldn't be affirming for reasons outside of the reasons granted by the BIA. I see I'm out of time. Are there any other questions? Here's your answer. To which question? That's that's fine. It's a generic answer. We can. It was. It wasn't the record. And even even if that argument is a winner for the agency, they didn't raise it. And therefore, they can't avail themselves of it today. I agree. Thank you. Good morning, your honors. And may it please the court. Corey Farrell on behalf of the attorney general. Can I start with a completely different aspect of this case? Of course, your honor. What is persecution? It's not defined in the act, but Acosta from 19, I guess, 85 or so said that, among other things, it's when you involve private actors, you can still have persecution if there are forces that the government is unwilling or unable to deal with. Yes, your honor. And now in 2018, you have the attorney general saying, I'm going to say that it's not just unwilling or unable to deal with. It is complete helplessness. It seems to me that's significantly different than unwilling or unable. I mean, I'm just thinking of let's just take a hypothetical state. Let's say there's a virus out there and the government isn't unwilling or unable to deal with it. It's willing, but it's not. But it's not completely helpless. It can do some things. Doesn't that really apply also here? Well, your honor, in matter of AB, the attorney general reiterated that. But the idea was somehow that they were equivalent. Are they really equivalent? Well, the government's position is that the standard in AB has not changed. It's still unable and unwilling. And the condoned and completely helpless language is just another way of being able to establish that standard. But governments, in my example, are able to deal with significant portions of this particular virus. They just can't deal with it all because things are slipping out. But they're willing to do it. They just can't control everything. But it's not the government's not completely helpless. But your honor, and I think that that's why in these cases, the board addresses them on a case by case basis. There's never been a board decision that says if X happens, then that equals unable or unwilling. You have to look at the facts surrounding each particular case to see where that is. Speaking of the facts of each particular case, our job is really hard here. Because at least in one instance, the BIA, rather than address kind of your standard list of elements for what you do, in I believe it's Franklin's case, it says, the BIA says there's no past persecution. It does not say that there was no future persecution. It makes no particular social group finding. It makes no nexus finding that I can tell.  And then it says, aha, we've got INRI A.B. and we win. It's a walk off home run. We're going to skip to the very end. And they don't read INRI A.B. the way that you do in your brief is, oh, it's just an alternative expression of what we've always done. They read it as, oh, we've got something with real bite now and we're going to use it. So, I mean, I asked last time, if you want to take in the last case, I don't know if you're here, but if you want to make the case that everything is fact by fact by fact, why don't you take a remand and say, now we'll make a decision on future persecution. Now we'll make a decision on particular social group. And now we'll make a decision on nexus before we just jump to the end with our walk off home run of INRI A.B., which courts don't always receive as well as the BIA received it. If INRI A.B. didn't change anything, why is it there? Why did the Attorney General take it and make that adjudication if it didn't change anything? Well, matter of A.B. really addressed the previous decision in ARCG and kind of the particular social group analysis made in that case for domestic violence. Is it your position today that unwilling or unable is equivalent to completely helpless? My position is that it is another way of satisfying the unable or unwilling. Which is consistent with the position that the department took in the Grace case before the DC Circuit. And to win, you need for us, at least with Franklin, you need for us to agree with that position, at least as to future persecution. Right? Yes, Your Honor. But you said you like to do a case by case analysis and look at each case on its own circumstances and decide what it is. But you made no determination, the BIA made no determination of future persecution on account of or particular social group. For your statement to ring true that each case is looked at on its own facts, why are we racing to the end? Why not remand and make those decisions? It seems that you're pushing INRI A.B. saying one thing in your brief that maybe it's just an alternative expression. But we're bound by the record. And the record in this case does not treat it as an alternative expression. So it seems that you're already backing off from what the BIA did. The BIA took INRI A.B. at full strength. And they're saying, oh, no, no, that was just half strength. Right. And also the board's decision in Franklin's case, it begins the paragraph by finding no clear error in the immigration judge's finding that the government of Honduras is not unable or unwilling to protect the applicant. And in the immigration judge's decision, which is also before this court, he cited this court's unable or unwilling case law to find that the government was not unable or unwilling. We wouldn't need to reach that point if the BIA would have addressed those prior points, though, and did so thoroughly and favorably with substantial evidence and not committing clear error. Right. That's correct, Your Honor. However, the unable or unwilling prong is something that an applicant has to prove to establish withholding eligibility for withholding of removal. So that is a dispositive issue. But the board doesn't have to reach that point. So let me just put a real fine point on this and then I'll turn it over. You've already agreed to remand. You're already sending the C.A.T. back. You're already saying we're going to send this one back. And your withholding claim is you're pushing us straight to INRI A.B. and you skipped all these steps along the way. I could see digging in if you weren't already agreeing to remand for my reissues on the C.A.T. claim. Why not just remand the whole thing and say, you know, we have these two brothers who each receive different BIA treatments. One is much more thorough in reason than the other. It sure seems, and we're going to send the lesser reason one back, but only partially. We're going to send it all back. And respectfully, Your Honor, when we looked at these cases, because of the procedural posture, because of how they were consolidated, the government took the position just to ask for the remand on the C.A.T. issue in Franklin's case rather than attempt to sever the cases. That doesn't answer the question. Why not send all of Franklin's entire case back? It's already going back. I mean, you surely aren't going to tell us that the reasoning in the C.A.T. case is the BIA's finest hour. Your Honor, but it is supported by the record. There is evidence that the government is able and willing to protect Franklin. Well, the definition there forces us into INRI A.B. and that's... And we don't know. We don't know what the I.J. necessarily considered here. We also, by the way, just in terms of something else, the I.J., we're not sure how the I.J. considered. There's the family statements. They referred to them, but did the I.J. really consider them and say what weight they're given or anything? Let's see. The immigration judge stated that he would give the statements appropriate weight. But what does that mean? That's the C.A.A. statement. Yeah, what does that mean? And then the board explained in Edwin's case that the statements were properly afforded diminished weight because there was no original Spanish language statement. That is as to the expert reports that were introduced. That was for the family statement. Okay, and the initial Spanish statement was not introduced. Correct. And the immigration judge stated that he considered all of the evidence. He specifically discussed the expert report and the country condition evidence. So I'm not asking to remand Edwin's case. I'm asking why not remand Franklin's withholding component, too. That's what I'm asking. Take Edwin off the table for remand. I'm not asking. Maybe my colleagues are asking, but I'm not. Why not send Franklin? Is the answer just because we win? Because of Henry A.B.? Because there's not a showing of complete helplessness? The answer is because that A.B. did not change the standard as the Fifth Circuit found in Gonzales-Miles. No, you can't say that because the B.I.A. treated it like a different standard. So you can come to us after the fact and say they didn't change the standard. But, you know, we're bound by what they did, not by what you say they did. And it looks like they changed the standard. Now, why wouldn't they change the standard? That guidance came from the Attorney General. And the Attorney General wouldn't have written it if he didn't want to change the standard. So I don't know that what the B.I.A. did is so worthy of backing off so fast. But it seems weird because what you want us to do is both back off of the B.I.A.'s rationale, say it wasn't that strict a standard, but we still win under a rationale that they didn't use. And I'm asking you, in a circumstance like that, doesn't a remand make a lot of sense? And the government's position is still, Your Honor, that the... Well, we know the government's position today. The question is, doesn't a remand make a lot of sense? We know the government's position. But the question is, to you, Ms. Townsley, and maybe you don't want to bark out on that blank, doesn't a remand make a lot of sense? Well, Your Honor, as Judge Phipps pointed out, we already did agree to a remand on the CAT issue. That's because of Myrie. That is because of Myrie, yes, Your Honor. I think that the board's decision in Franklin's case on CAT is... So we're already getting Franklin's case back. You might not have the authority at oral argument to make that decision. I totally understand that. But do you think that's the sort of thing that you could maybe supplement and say, we've looked at this and we've made our decision because it's already going back. And, you know, it sure would be nice if when the decision comes up to go all in on In re A, B, if that's what you want to do, that there wasn't this ambiguity between or dissonance between what the board did, strong version of In re A, B, and what the Attorney General comes with now, weak version of In re A, B. Let me just go back to one point that Judge Phipps made. Why in the world would the Attorney General take over the process, which the Attorney General has the right to do, but only does it rarely, in A, B, if the Attorney General wasn't attempting to change what, or in this case, unable to control means? Right. And, Your Honor, I cannot speak to what the, you know, the AG's motivation behind that decision was. I can only speak to how we are reading the case, how the Fifth Circuit read matter of A, B, and found that it is. But the point is, I can't think of a human reason the opinion would have been issued if there was an attempt to change something. And yet the argument in Grace and the argument here is that they're just essentially equivalent. Right. And other courts have, although we've had this unable or unwilling standard for years, other courts have used the condoned and completely unwilling. Unwilling is easy. Unwilling is saying, the government is saying, look, we don't care what you do. You know, some persons might say, that's the Philippines, for example. Go ahead. Just go do it. Take care of them. But this is, it's unable. We can't, we can't do enough to help you. And the question is, at what level is we can't do enough to help you? Is it we can't do anything at all? Or we can do some things, but we just can't do enough to get to your case? Or we don't have enough person power, et cetera. Right. That's different than what I see A.B. saying. To me, A.B. was, a lot of people have taken off on Judge Posner's comment in Galena from 2000 and say, oh, this gives us another thing to make it, the standard, even more difficult. And as I stated, Your Honor, the Seventh Circuit has used that. The Fifth Circuit used the standard. This court, in an unpublished decision, cited the Fifth Circuit's completely helpless standard. That this has been out. This is not. I somewhat wonder, although I can't ask Judge Posner today because he has mental acuity issues at this point. But I almost wonder if it wasn't a stray comment that has been taken out of context. And others have now picked up on it. But I keep coming back to my point about the virus, which in fact we are facing today. And governments are unwilling or unable. They're willing, they're able to do a lot of things. They're able to contain a whole lot. They just can't contain everything. Things seep out. Right. And so Berbion, the First Circuit decision, it would seem that might be a way for us to look at this. Your Honor, and I would say my time is up. No, go ahead. But as I stated before, that there is evidence in this record that the government is both willing and able. As we point out in our brief, the government, the police did take a report in Franklin's case and arrested a gang member. The government was sent to San Pedro Sula and Edwin stated that he felt safe enough to return after the government was sent in. I mean, the problem that we have here, I mean, we know what happened to Henry. He goes back and 15 days later he's gone with a note on him, six more to go. So it doesn't look pretty. And the body lays in the street for hours and nobody bothers to move it. And the statements of the family appear to have been referred to, but we don't know to what extent they were actually considered. Everything seems to point to a remand. Thank you. Thank you. Yes, on the question of AB and a remand, we frankly think the remand is appropriate here because as Judge Fitz pointed out, while the government says, condone the complete helplessness, it's a reformulation or another way of saying unable and unable. The BIA only cites AB. The BIA does not. Are you talking about Franklin? Right. The BIA does not cite to any of the circuit's precedent. So remand is appropriate so that we can have some review under the circuit precedent of Gallant and Benda. And it would be helpful to have some instruction to the BIA as to what the circuit believes the standard is. I do agree with Judge Ambrose concerning the line in Galena. I believe in Galena. The court ultimately found that the government did not condone the behavior, but still granted relief. And so if the position of the government here is that the standard hasn't changed, then the governing standard of the circuit should apply, which is unwilling and unable. I do also want to point out there was a question about particularized social groups. And I noted that on pages E47 and E51 of the record, we do note other particularized social groups for Edward and Franklin, including persons perceived by a gang as contributing their authority and potential informants. So that was raised before the BIA. That was raised before the EIJ and not addressed in the BIA. The reason I picked up what I did, social group, was that the other literature relying upon seems so amorphous that even under our jurisprudence, it seems to me you'd have a hard time establishing that as a particular social group under the BIA. The informants? Yeah. How do you identify that? One, I'm not sure it's immutable. The other test we have, informants is probably easier than people who are not willing to be recruited, I think, was one of them. To subject to the authority of the gang. The strongest our case lies on informants is known informants, which is kind of a strange game, because typically informants want to be confidential, not known. So, I mean, it's not a huge set of people. Again, though, this was not decided by the BIA. No, it's not. I would also ask for remand for both Edward and Franklin, because as the court has pointed out, you saw what happened to Henry. He was back in Honduras for two days. But the record, sad but true, I mean, the EIJ and the BIA have done a very, I think, you know, compared to what we see, a pretty thorough job. In Edwin's case, not in Franklin's. I think part of the problem here is that these cases have been siloed and should have been. They were consolidated before the EIJ for a reason. And if there are disparate rulings on the same set of facts for the same brothers, one of them is sent back and one of them is not. There should be. There should be consistency between the two cases. I mean, I mean, strange but true. The substantial evidence standard doesn't require as much. I mean, strange but true. It just doesn't. But again, for the reasons we discussed, including the failure to review the full record, that would address, I think, some of those concerns. Thank you, Your Honor. Thank you. Yeah. Unless we get a transcript of the argument, have you? Ask the government. The government could pay for that. And if you speak with Ms. Amato, she can explain to you the details of how you get that transcript.